My name is Beth Vinson and I'm here on behalf of the Buchness. This is my colleague Jessica Crowley. We're here about a case that, to be blunt and simple, is another example of 12B6 abuse following Twombly and Iqbal. What we have are consumer homeowner plaintiffs challenging a non-judicial foreclosure in Arizona. Unfortunately, prior to the Arizona Supreme Court making some decisions about sufficiency of the pleadings in the Hogan case that was recently decided, we've had a slew of cases that were removed to federal court and just pretty much summarily dismissed on the pleadings. I think that there's been an unfortunate tendency to stereotype all homeowner cases into a certain ill-defined category and dismiss them. So I wanted to talk about the pleading standard post-Twombly and Iqbal and how it was met here, and about the facts and the claims pled in this case that were misconstrued or that there were fact findings on the pleadings that we would construe as impermissible, and public policy reasons for their application of black letter property law in Arizona. We filed this case in state court. Our Cullen, the Cullen case in Arizona expressly rejects the pleading standard of Twombly and Iqbal and relies on Arizona Rule of Civil Procedure 8 for notice pleading, similar to the analogous Rule 8 in federal court. We were removed and we never had the chance to amend. We did ask to amend in our response to the defendant's 12B6 motion, should the court find any of the allegations insufficient, but the case was dismissed and a judgment entered the same day. I think that you have a catch-22 post-Iqbal in that, in some cases, in that you're asking plaintiffs to, you know, prove facts or specify enough facts that may be solely in the control of the defendants. There's an unequal access to discovery when you have a consumer or homeowner trying to challenge a bank servicer in which there have been multiple transfers of the interest in that plaintiff's note and deed of trust. They have asked for information, specifically in my case. They received partial information, and then they did independent investigation. And I think that our complaint in this case was very fact-specific. The court rejected some of our securitization allegations and wanted to just dismiss them. I think construing it as more of a wholesale condemnation of securitization, when, in fact, what we were trying to plead, perhaps inartfully, was that the note was very fact-specific, and that it was intended to go through four very specific entities that were set forth in their pooling and servicing agreement by a cutoff date in 2006. So, counsel, your underlying action was what, breach of contract? We did. We had a breach of contract and essentially general breaches of Arizona's nonjudicial foreclosure statute. And even recently, I think, in Kenterra, where Judge Snow said, yes, I think breaches of the nonjudicial foreclosure statute can constitute a breach of contract action, or at least state a claim to make it through a 12B6 motion. Those, I mean, most courts have not looked very favorably on using the arguments regarding splitting of the note and the deed of trust and the securitization features of the note to support a breach of contract action. Yes. I think that when you can tie it to, and this is what Hogan made very clear to the court, I think, by negative implication, because what they said was, here, this really was just show me the note, and that they were trying to impose an additional requirement that doesn't appear in the nonjudicial foreclosure statute to say specifically, you know, you're going to show the note, you're going to record the note with the permanent request, and I'm also convinced, anyway, that there was no evidence against the counterpoint of the environmental judiciary. So that's no longer in the statute. You said that it seems like there's no calibration evidence trying to move things forward because they're the ones giving up the most valuable protection. But still, the Court said, and I think, rightly, that that provision is not there. So Hogan seemed to be cut to the chase ‑‑ Yes. That seemed pretty much on point here. The borrower got the money, got the house, defaulted, and the trustee foreclosed. You know, end of story for purposes of Hogan. Why isn't that just the end of the story and the district court was correct? Because precisely what Hogan said was not pled is what was pled here. We did plead that the trustee lacked authority. We pled that the beneficiary ‑‑ I'm sorry, go ahead. We did deny that the borrower defaulted. We did deny that the borrower defaulted, but the Court construed that we did not deny that the borrower defaulted. Because what our position is, and I think if you look in the record, page 33, 92, 93, 199, those are references to our complaint. What we said was default is a legal conclusion, in essence, because what you have is a party inserting themselves into our note in deed of trust that may not be the party, but is not the party, entitled to payment. So is not paying that party, is that a default? In the note, it's the failure to pay the mortgage. The note holder. The note holder. Correct, which is the party entitled to enforce the note. And again, that's putting aside the legal issue, because Hogan seems to say, let's just look at the substance of this transaction. The borrower did not pay their mortgage payments as they came due. And you're arguing that it was the wrong party asking for the mortgage payments. But the bottom line is those mortgage payments were not paid. Is that correct? Correct. My client paid mortgage payment for years, not knowing if they're going to be applied in satisfaction of their note. And were they declared in default while they were making the mortgage payments? They were not in default after they stopped. We don't know the situation, because, again, we have a party kind of usurping the status of beneficiary or a lender's valid successor in interest of their contract. So Hogan said, we're not going to require the trustee to come in and prove that they are who they say they are and that they've got it. All that burden is on the facts that show that the beneficiary. Right. And then the district court said there were no plausibly alleged facts. And so what were the plausibly alleged facts? Okay. The plausibly alleged facts were that that note had to transfer, and presumably the deed of trust is presumed to go with it, the beneficial interest in the deed of trust is presumed to go with it, if, in fact, the note was transferred through four specific parties. The parties, the defendants, contracted specifically to have intervening endorsements to go through these four parties, and it's ironclad by a certain cutoff date. Then in 2009, on the Arizona Public Records, Maricopa County Recorder's Office, you see an assignment from this A party of MERS, actually. MERS did the assignment in its own name, not even ñ in the deed of trust itself, MERS is usually limited, solely as nominee or some sort of special agent for the lender or for the lender's successor in interest. The counsel, what difference would those allegations make if no payments were being made by the borrower? Well, just because I have a contract to pay somebody doesn't mean I have a contract to pay the wrong party. All of my performance obligations run ñ I mean, I think if you look at the language at the beginning of a note, at the beginning of a deed of trust, the performance obligations run to the note holder in the note and to the lender and lender's successor in interest. If you told your client, somebody told them who they were supposed to pay to, and then they stopped paying, and so you're now saying, well, but whoever told them to pay to this party, well, maybe that's in debt, maybe they're not really entitled, so my client can stop paying until, I don't know what, until you've verified it or something like that. That seems to be where the district court was puzzled or going off track there. So what exactly is that? Am I characterizing that accurately? I think so. I think that there's ñ it's hard to ñ there's a baseline assumption by most people that, of course, the party asking for payment is the party entitled to payment. And I don't think that that assumption can be made at all in modern times, post-securitization, post the mortgage crisis. Actually, they had specific facts. It wasn't that they stopped paying and were asking and nobody was telling them. I mean, they were trying to modify their loan. They were asking. But what they determined, they found specific facts in this case. They found specific facts that showed that this Letitia Quintana worked for Rican Trust. This Letitia Quintana who purported to transfer from Countrywide via MERS or not even ñ So is your position, if you're unable to track the note holder through ñ if the mortgagee, I guess, is unable to ñ the ñ ah, I can't get the right word. The homeowner. Yes. Is unable to track through the securitization or through the legal documents who the legal note holder is, then they're entitled to stop paying on their mortgage. Is that your position? I mean, that's what I think I'm hearing. Yes, I think their performance obligations run to that contractual counterparty. And it's not that if they just suspect, but if they find information that we ñ I think that's an issue. I'm not saying wholesale, everyone stop paying their note until you can figure out who the note holder is. I don't ñ I understand that that's not ñ that's not good public policy. But what is good public ñ the law? Is it the law? Well, it could be the law if you look at the contract. It could be the law if you look at the definitions in our nonjudicial foreclosure statute, which is voluntary, by the way. The lenders can choose to judicially foreclose and prove up more of their status. And they would be required to. Now, they're doing this. The trustee said, borrower is in default. Here's your notice. And then they went through the statutory procedure to foreclose. And in Hogan, the State Supreme Court seemed to say that was enough. But in Hogan, the court was highly concerned with, well, where else ñ that they had already conceded the note transferred validly to the party that was now claiming the benefit of the assignment. And in our case, that's not the case at all. Counsel, I would look at this case differently if there were allegations that the payments had been made when the homeowner got the statements at the end of the year or the end of the month, the balance was not going down and the money was not being applied to their mortgage. Correct. That would be a different case than one where the homeowner says, I'm not going to pay because I can't tell where the money's going. Well, it was more of, I'm in trouble. I need to talk to a true party of interest, to my loan, somebody who would have authority and, in fact, responsibility perhaps under Federal programs to modify my loan and to look at this. And then they discovered, well, in fact, that B of A was making claims to rights as an agent to an undisclosed principle that was ñ we don't know what kind of authority that principle is conferring on B of A. We only know that an agent doesn't confer authority in itself. So they were having trouble. They were talking. They were paying. They asked for a statement. B of A gives them a partial statement. They find a statement of accounting that was attached to the complaint for the securitization trust that differs because what B of A gave them was a partial snapshot of what they had paid into B of A. But the note says that it should be paid to the note holder in a specific order, principle and interest, not that it would be committed. It may be unfortunate that they couldn't find someone to negotiate with, but I don't see how that relieves them of the duty to pay on the mortgage or from being foreclosed on if they don't pay. Well, they're not going to pay the wrong party. That's the problem. I thought the problem was they couldn't find someone to negotiate. Well, it's all of that, all of that. And I think our legislature, any changes to the nonjudicial foreclosure statute have been in favor of helping people find their lender. There's now 33-807.01 requiring the lender to contact the borrower. The statute itself, which is construed strictly, defines a beneficiary, which is the only person who can trigger the trustee to exercise the power of sale. The beneficiary is defined, the person for whose benefit the trustee is given. And courts have construed that same language in Oregon in their statute to mean the note holder because who's getting the benefit of that contract? I mean, the deed of trust is an ancillary instrument designed to secure that note. The person who's getting a benefit is a person that is entitled to repayment. Counsel, did you want to save some time for rebuttal? Sure. All right. Thank you. Good morning. May it please the Court. I'm Robert Sheely here on behalf of the appellees and the defendants in the case. I think Your Honors have hit the point right on the head. Let's start out with just a broad fact overview. This case, and I think counsel has agreed in the appellate briefs, is a run-of-the-mill, facts-are-not-unusual type of MERS mortgage case, which the Court has seen many and the district courts and state courts have seen many more. There's nothing unusual here about what happened. In fact, I think there's no doubt whatsoever and there's no dispute that these plaintiffs stopped paying anybody. There was not evidence, as Judge Brownson, as you suggested, where I have seen cases and handled cases, I've handled hundreds of these cases, where people have come and said, I paid X dollars and the bank misallocated it. They have a statement, they have something to show that there's been a misallocation or that there's missing payment or anything along those lines. When those cases get filed, the defendants look at them very carefully. There's evidence of a mistake or potential mistake or at least a legitimate question as to what has happened and the banks deal with those. This is not such a case. This is a case where the homeowner has made up an excuse, I can't figure out to whom I'm paying so therefore I'll stop paying altogether. Counsel, you will agree that the system that's being used with the securitization of the notes and the turnover in the beneficiary is a little confusing in terms of who is supposed to be paid or whom is supposed to be paid. I don't think that's accurate, Your Honor. Ask from the consumer standpoint because the consumer has a loan servicer and these parties knew who the loan servicer was. They dealt with the loan servicer. Not consistently, though. Well, it was consistently. I mean, but as a general matter, is the loan servicer generally consistent or does that change? Well, it may be one or the other. It depends on the mortgage and the securitization, but generally it starts out with a loan servicer. And so what does that loan servicer do? That loan servicer collects payments, keeps track of the accounts for the investors, for the lenders. Who was the loan servicer here? I'm sorry, Your Honor. Who was the loan servicer here in this case? Yes, I believe it was Bank of America. At all times? It may have been Bank of New York, Mellon. I'm afraid I'm not sure who was the loan servicer. That's the problem. Yeah. That's the point that the plaintiffs are making. But the plaintiffs knew who the loan servicer was. Every time there was a change of a loan servicer, the loan servicer sends written notice. And the fact that I sit here and can't remember the briefs doesn't mean that the plaintiffs didn't know who that was. They paid that loan servicer for years. And they did fall behind because of the economy, and everybody feels badly about that. I personally feel badly about that. Does the loan servicer have a financial stake at all in the mortgage payments? It depends, again, on the case. In this case, the loan servicer did not have a financial stake in the loan. So they were just like an accounting service. Is that right? That's what they do. They keep track of the accounts. They're very specialized. They're very talented and able to do that, and they keep track of the accounts. It's not that they don't make mistakes. They do make mistakes. But there's no mistake made here. There's no pledge of them. There's no evidence of a mistake. There's no ETF transfer that was made that wasn't accounted for. There's no accounting at the end of the year. They do get year-end accounting statements that says they paid for a whole year, and their principal balance didn't get down. There's no bank statement that I paid in a month that shows I paid one month and that the payment wasn't secured. There's no evidence here whatsoever that there was any misapplication of any funds anywhere at any time. Does the loan servicer have an agreement with all of the lenders or note holders to pay whatever money is received, to pay it over to the note holder or the mortgagor? Yes. They have, in any particular case, the loan servicer does have an arrangement. The loan servicer gets paid for the services that it's providing in managing the loans, but they take the money in and they pay it to the investors, whoever they've agreed is the lender or the investor, depending on the paperwork. Is that money ever considered the property of the loan servicer? I mean, is that money considered to be in any way the property of the loan servicer before it's paid over to the mortgage holder or the note holder? I would hesitate to speak to that in general because it would depend on what the paperwork said between the loan servicer and either the lender or the investors. But in this particular case, I haven't looked at those papers and I don't know whether the servicer claimed any ownership of the funds. I doubt that it did, but I don't know for sure. The point I wanted to make was that this case, the Ninth Circuit has ruled on basically this case in Cervantes, and I think the challenge for the plaintiffs in this case is to try to get this case or distinguish why it's different than Cervantes and why the result is different than Cervantes. And I don't think the plaintiffs have dealt with that at all. They only mentioned Cervantes once in their brief, in their opening brief. We mentioned it in our response. They didn't mention it at all in their reply. And I think that the court, Judge Rawlinson, you said on that panel you're well familiar with Cervantes. I won't go through that. But I think that Cervantes dealt with many of the issues and determined that the court doesn't even have to address whether there was a split of the note and the deed. I don't think there was. The court in Cervantes said even if we thought there was a split, we don't have to get there because unless MERS is acting on its own or the transaction somehow violates the foreclosure statutes of the state, we don't have to get there. And neither of those circumstances were present in Cervantes. Neither of those circumstances are present in this case. I think that, again, from the Hogan side, I mean, I don't think Hogan changed the analysis at all. I think Hogan is quite mainstream. It did adopt that language from the restatement, Section 54, about the deed and the trust needing to stay together. And I think the court in Cervantes basically dealt with that in the same way. What it said was that, and I'm looking at page 1054 of the opinion. I got that wrong. Pardon me. It said that basically the note holder doesn't have the right to foreclose on the property, which it doesn't, has a right to repayment. It doesn't have the right to foreclose. And the holder of the mortgage has a right to foreclose but doesn't have a right to repayment. So in that sense, the two must stay together. But the Ninth Circuit, and that's just consistent with what Hogan said. Otherwise, it said it's not a show-the-note state. And what we have from Plaintiff's perspective is what they allege is you don't have the standing to enforce the note. And the only response to that, if the court were to accept that line of thinking, would be to say, okay, well, let me go to the portfolio file here and bring out the original note, which would mean show me the note. And Arizona has made it clear it's not a show-me-the-note state. So from the plaintiff's perspective, which is what you have to look at here, is they know who they have to pay. They know they haven't paid, and they know that they're in default. And there's every adequate reason here to allow this case to go through the foreclosure. This is running on three years now since I think the plaintiff's paid anything on the house or is still living in the house. And I can't imagine a circumstance, as the court presented to plaintiff's counsel here, or appellant's counsel, where if one can determine that they can't figure out to whom the note is owed, that they can just stop paying. That would just throw the mortgage economic system into a whirl. The parties, again, know who to pay. They didn't pay. The foreclosure is appropriate in this case. The one thing I want to say about the – about the – two things I want to say. One, although it's not binding on this Court in any regard, we did provide to you a copy of Judge Teelburg's recent decision in the Barone case. And, again, I stress, and you know it's not binding on this Court, but I do think it's useful to look at because I think he dealt with a lot of the allegations that are similar to what are being raised in this case. And I think he gives a good analysis. One that the Court might be interested in looking at is how the district courts in Arizona, in light of Hogan, view the plaintiff's position in this case. And another reason I think it's important for the Court at least to review is Judge Teelburg was the In re Meurs lawyer for the multi-district and also the judge on the Cervantes case. And I think it's dealt with Meurs and dealt with these issues probably more than any other district court judge in the country. And so I think that his thinking is – would be useful for this Court to know. And, finally, with regard to the amendment, the Court dismissed this case. She did not dismiss it with prejudice. She did dismiss it with an order of judgment to be entered. But I think that it was incumbent upon the plaintiffs to come back either in a post-judgment relief or in a motion to reconsider or otherwise to seek affirmative relief for an amendment. They never did that. And I think that they've waived that right to come. And what they've asked this Court to do is to remand and give them a chance to amend. And I think that they – So the district court just dismissed but didn't – you know, under Rule 41 it says, if you don't say that it's with prejudice, then it's deemed to be without prejudice. How do we know that it was with prejudice? It was not with prejudice, as I read the opinion. As far as I know, and my practice has always been, if the judge says with prejudice, it's with prejudice. If the judge says nothing, it's without prejudice. And certainly under these circumstances, the judge did not say with prejudice. If I had been in that boat, you can be assured that I would have filed a motion to amend or a motion to reconsider, or if the judgment had been entered as some sort of post-judgment relief, I would not have let it go without filing affirmatively. I don't think filing it in response to a motion to dismiss or putting a line in a motion to dismiss is an adequate request to the Court for leave to amend. Typically judges give leave to amend. It may be that the judge considered this futile, as Judge Chilbert did in the Barone matter. This Court never got the chance to say it was futile, never had the motion in front of her, and I think that plaintiffs have waived any further rights in that regard. That's all I had to say. If Your Honor should have anything further, I'd be happy to answer. It appears not. Thank you, counsel. Thank you, Your Honor. Ms. Kagan. It would be my pleasure, Your Honor, to permit the motion to amend now.   Thank you, Your Honor.  We have time for one more question. Carter, please. Yes. I'm sorry, Your Honor. Yes, quickly on the procedural issue. I did look up the case on the 9th Circuit, and if the under Rule 41-a, and if it does say – it doesn't say with prejudice, it is presumed to be with prejudice, which I've seen the contrary rule in some circuits, but I found those rules. I wish I had the citation with me, but I don't. It's presumed to be with prejudice? With prejudice. That wasn't my understanding. That's not my understanding either. I wish I had the citation here, because I was looking at that. At any rate, Cervantes – again, I think Cervantes and Hogan are helpful for my plaintiff's case in that the Court specified in both of those cases that if you had a reason or facts, this is sufficiency of the pleading. If you have facts to allege that are – raise a plausible inference that they lack authority, a beneficiary is the only person that can trigger the power of sale in the deed of trust and declare a default and accelerate the note. It's called the lender, actually, in the deed of trust itself, and the deed of trust talks about a loan servicer when it means loan servicer. There's one paragraph that discusses loan servicer in my client's deed of trust, and it's not – the same nomenclature is not used when it's talking about who has the power to accelerate the note, substitute the trustee, notice the sale. Again, also, Judge Teelberg said, and this Court affirmed in Cervantes, that if a plaintiff has alleged violations of Arizona recording and foreclosure statutes connected with the purported splitting of the notes and deeds, then they may stay the claim. The Court in Hogan said if the plaintiff has alleged violations of the nonjudicial foreclosure statute, including lack of default, that's one of them. I think we did allege those. I think we pointed it out in our briefing where we allege those, and I think that is what makes our case different. It's almost as though there is a road map now in hindsight and that we met that. All right. Thank you, counsel. Thank you to both counsel. The case, as argued, is submitted for decision by the Court.
judges: Hug, Rawlinson, Ikuta